**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-cv-23306-BLOOM/Elfenbein**

MARKEL INSURANCE COMPANY,

Plaintiff,

v.

CORAL GABLES LODGE NO. 260
FREE AND ACCEPTED MASONS
OF FLORIDA and FETES &
EVENTS, INC.,

Defendants.
__________________________/

**ORDER ON MOTION TO DISMISS COUNTERCLAIM**

**THIS CAUSE** is before the Court upon Plaintiff Markel Insurance Company's ("Plaintiff") Motion to Dismiss the Counterclaim, ECF No. [27] ("Motion"). Defendant Coral Gables Lodge No. 260 Free and Accepted Masons of Florida ("Defendant") filed a Response in Opposition, ECF No. [28], to which Plaintiff filed a Reply, ECF No. [31]. The Court has reviewed the Motion, the supporting and opposing submissions, the record, applicable law, and is otherwise fully advised. For the reasons that follow, Plaintiff's Motion is granted.

## I. BACKGROUND

According to the Counterclaim, Plaintiff issued a policy of insurance ("Policy") to Defendant providing liability coverage for claims against it. ECF No. [20] ¶ 6. The Policy afforded various types of coverages, including coverage for "sums the insured becomes legally obligated to pay as damages because of . . . 'property damage,'" which is defined to include "[l]oss of use of tangible property that is not physically insured." *Id.* ¶ 7. The Policy also placed a duty on Plaintiff to defend such claims. *Id.* ¶ 8.

In November 2024, Fetes & Events, Inc. ("Fetes") filed a lawsuit against Defendant, captioned *Fetes & Events, Inc. v. Coral Gables Lodge No. 260 Free and Accepted Masons of Florida*, Case No. 2024-021421-CA-01 (Fla. 11th Cir. Ct. Nov. 7, 2024) (the "Underlying Lawsuit"). *Id.* ¶ 9. The operative complaint in the Underlying Lawsuit alleges that Defendant caused Fetes loss of use of tangible property that is not physically injured, thus triggering Plaintiff's duty to defend. *Id.* ¶ 10. Plaintiff agreed to defend Defendant under a reservation of rights. *Id.* ¶ 11.

In response to the Amended Complaint in the Underlying Lawsuit, Defendant asserted a counterclaim against Fetes ("the Underlying Counterclaim"). *Id.* ¶ 12. The attorneys' fees and costs incurred in filing and prosecuting the Underlying Counterclaim were incurred by Defendant, as Plaintiff did not consent to appointed defense counsel providing such services. *Id.* ¶ 13. Defendant sent a request to Plaintiff to include the Underlying Counterclaim in the qualified defense it was providing, but Plaintiff denied the request for coverage of the Underlying Counterclaim. *Id.* ¶¶ 14, 15. As a result of Plaintiff's denial, Defendant had to retain counsel to prosecute the Underlying Counterclaim. *Id.* ¶ 16.

In May 2026, Plaintiff filed the instant lawsuit against Defendant, seeking (1) a declaratory judgment that the Policy's Insuring Agreement is not triggered; and (2) a declaratory judgment that the Policy's Contractual Liability Exclusion bars coverage. ECF No. [1]. In July 2026, Defendant filed the Counterclaim, seeking a declaratory judgment that the Underlying Counterclaim is covered. ECF No. [20].

In August 2026, Plaintiff filed the Motion, arguing that the Counterclaim should be dismissed because the Policy does not provide coverage for the prosecution of counterclaims. ECF No. [27]. Defendant responds that "whether [Plaintiff]'s duty to defend the Underlying Lawsuit

extends to that compulsory counterclaim is, at a minimum, a plausible claim for declaratory relief that cannot be resolved against [Defendant] on the pleadings." ECF No. [28]. Plaintiff replies that Defendant has not met its burden of showing that coverage for the Underlying Counterclaim is triggered by the plain language of the Policy. ECF No. [31].

## II. LEGAL STANDARD

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Additionally, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If the allegations satisfy the elements of the claims asserted, a defendant's motion to dismiss must be denied. *See id.* at 556.

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party

are accepted as true."); *Iqbal*, 556 U.S. at 678. However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).

Courts generally "do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (citation omitted). However, there is an exception when "a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Id.* (citation omitted). Furthermore, courts may consider "matters of which a court may take judicial notice" when ruling on a 12(b)(6) motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## III. DISCUSSION

### A. Legal Principles

#### i. Principles of Insurance Policy Construction

"Under Florida law, an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy. As with all contracts, the interpretation of an insurance contract is a question of law to be determined by the court." *Vozzcom, Inc. v. Great Am. Ins. Co. of N.Y.*, 666 F. Supp. 2d 1332, 1336 (S.D. Fla. 2009) (quoting *Fabricant v. Kemper Indep. Ins. Co.*, 474 F. Supp. 2d 1328, 1330 (S.D. Fla. 2007)), *aff'd*, 374 F. App'x 906 (11th Cir. 2010). Florida law requires that "in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." *United States Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007).

Additionally, "Florida courts have said again and again that insurance contracts must be construed in accordance with the plain language of the policy." *Vozzcom*, 666 F. Supp. 2d at 1336 (quoting *Siegle v. Progressive Consumers Ins. Co.*, 819 So. 2d 732, 735 (Fla. 2002)). Indeed, "[i]n construing terms appearing in insurance policies, Florida courts commonly adopt the plain meaning of words contained in legal and non-legal dictionaries." *Cont'l Cas. Co. v. Wendt*, 205 F.3d 1258, 1263 (11th Cir. 2000) (per curiam).

Contract interpretation is typically inappropriate at the motion to dismiss stage. *See, e.g.*, *Geter v. Galardi S Enterprises, Inc.*, 43 F.Supp.3d 1322, 1328, 2014 WL 4290550, at *5 (S.D. Fla. Aug. 29, 2014) ("[T]he Court may not engage in contract interpretation at the motion to dismiss stage, as these arguments are more appropriate for summary judgment.") (citations omitted). However, where the contract terms are unambiguous, the contract should be enforced according to its terms, even at the motion to dismiss stage. *See Sarria Holdings, Inc. v. Walgreen Co.*, 2003 WL 1528711, at *2 (S.D. Fla. Jan. 31, 2003) ("[T]his court can look to the contract itself and determine if it speaks to the issues in dispute. If the contract covers plaintiff's claims in clear and unambiguous language, then plaintiff's ability to state a claim upon which relief may be granted, thus surviving this motion to dismiss, depends on the specific terms of the contract, which the court analyzes as a matter of law."). "Whether a contract is or is not ambiguous is a question of law to be determined by the trial court." *Ocean Reef Club, Inc. v. UOP, Inc.*, 554 F.Supp. 123, 128 (S.D. Fla. 1982). In cases where a contract is unambiguous, the usual rule that ambiguous insurance policy provisions must be construed in favor of the insured no longer applies. *Vozzcom*, 666 F. Supp. 2d at 1339; *Bond Safeguard Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 628 F. App'x 648, 653 (11th Cir. 2015) ("Exclusionary provisions that are clear and unambiguous must be enforced according to their terms, and 'courts may not rewrite contracts, add meaning that is

not present, or otherwise reach results contrary to the intentions of the parties.'") (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)).

**ii. Duty to Defend**

Under Florida law, "[t]he central inquiry in a duty to defend case is whether the complaint [in the underlying action] alleges facts that fairly and potentially bring the suit within policy coverage." *Hallums v. Infinity Ins. Co.*, 945 F.3d 1144, 1149 (11th Cir. 2019) (quoting *Hartford Accident & Indem. Co. v. Beaver*, 466 F.3d 1289, 1292 (11th Cir. 2006)); *see also Hale v. State Farm Fla. Ins. Co.*, 51 So. 3d 1169, 1171 (Fla. 4th DCA 2010) ("If the complaint alleges facts that could bring the insured partially within coverage of the policy, the insurer is obligated to defend the entire suit." (quotation omitted)). "If the complaint, fairly read, alleges facts which create potential coverage under the policy, the insurer must defend the lawsuit." *Fun Spree Vacations, Inc. v. Orion Ins. Co.*, 659 So. 2d 419, 421 (Fla. 3d DCA 1995) (citations omitted). Therefore, to assess whether the insurer has a duty to defend, the reviewing court is to apply the language of the applicable policy to the facts in the complaint. *Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 143 F. Supp. 3d 1283, 1293 (S.D. Fla. 2015). If the allegations in the complaint "leave any doubt as to the duty to defend, the question must be resolved in favor of the insured." *Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993).

**B. Application of Legal Principles**

Plaintiff argues that prosecution of the Underlying Counterclaim is not covered under the Policy, which focuses on a duty to "defend" the insured "against" a lawsuit. ECF No. [27] at 7–8. Defendant responds that the duty to defend requires an insurer to provide an adequate defense to the *entire* suit, and because the Underlying Counterclaim is essential to rebutting the claims against Fetes and reducing the damages sought, prosecution of the Underlying Counterclaim is part of the

defense. ECF No. [28] at 5–6. Moreover, the rule espoused by Plaintiff is not settled law, and courts have reached the opposite result. *Id.* at 7. Fundamentally, Defendant argues the Underlying Counterclaim is compulsory and inextricably intertwined with the defense in the Underlying Lawsuit, and Florida's rule that doubts regarding the duty to defend are resolved in favor of the insured counsels against dismissal at this stage. *Id.* at 9–10. Plaintiff replies that the duty to defend is a purely legal question capable of resolution at the pleading stage, and the Policy only covers claims brought against Defendant. ECF No. [31] at 2–4.

The Court agrees with Plaintiff and begins with examining the relevant portion of the Policy, which states as follows:

> **SECTION I - COVERAGES**
> **COVERAGE A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1. Insuring Agreement**
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

ECF No. [1-3] at 40.

The "duty to defend" is plainly constrained to providing legal support "against" any suit seeking damages. The Policy's text contains no indication that the "duty to defend" covers affirmative claims brought by the insured. The Court finds no ambiguity, and as such, the Court has no difficulty resolving the meaning of the Policy at this stage of the proceedings.

This issue—while not addressed by any Florida state court or the Eleventh Circuit—is not entirely without guidance in the law. In *Culbreath Isles Prop. Owners Association, Inc. v. Travelers Casualty and Surety Company of America*, the Middle District of Florida confronted a

similar issue. 982 F. Supp. 2d 1298 (M.D. Fla. 2013), *rev'd and remanded*, 601 F. App'x 876 (11th Cir. 2015). The court began by citing the myriad cases standing for the proposition that "insurance companies who issue liability and defense policies have no obligation to offer policy benefits to insureds in the context of offensive actions (claims filed 'by' insureds)." *Id.* at 1304–05 (collecting cases). The court concluded that "because the losses in this case are the result of a claim filed *by* [the insured] rather than *against* [the insured], [the insurer] has no duty to indemnify or otherwise offer coverage for those amounts." *Id.* at 1305. The Eleventh Circuit ultimately reversed and remanded, but not because it disagreed with the lower court's legal reasoning as to coverage for claims brought *by* insureds. Rather, the Eleventh Circuit found that lawsuits filed by the insureds were "wrongful acts" covered by the policy in that case, and the fee and costs judgments were the claims "against" the insured under the policy. *Culbreath Isles Prop. Owners Ass'n, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 601 F. App'x 876, 878–79 (11th Cir. 2015).

Defendant's contrary arguments are unavailing. First, Defendant cites cases for the proposition that where counterclaims brought by an insured are closely related to a lawsuit brought against it, the insurer is obliged to prosecute that counterclaim as part of its defensive obligations. But none of the cases cited is persuasive. The court in *Mount Vernon Fire Insurance Company v. Visionaid Inc.* held precisely the opposite position that Defendant espouses. 477 Mass. 343 (2017). Specifically, the court disagreed "that an insurer should be obligated to prosecute an affirmative counterclaim on behalf of its insured." *Id.* at 349. The word "defend," the court found, was "not ambiguous" and does not require an insurer to "prosecute an affirmative claim . . . no matter how advantageous that claim would be to the insured." *Id*. Defendant cites to the dissent in *Visionaid*, arguing that the existence of the dissent shows the issue is unsettled. However, that argument is without merit.

Defendant also cites to *Safeguard Scientifics, Inc. v. Liberty Mutual Insurance Company*, 766 F. Supp. 324 (E.D. Pa. 1991), *aff'd in part, rev'd in part*, 961 F.2d 209 (3d Cir. 1992). However, this out-of-circuit decision is not binding on this Court. Moreover, the court's conclusion in *Safeguard* was expressly premised on a finding that "the pursuit of the counterclaims was inextricably intertwined with the defense of [the insured's] claims and was necessary to the defense of the litigation as a strategic matter." *Id.* at 334. No such conclusion is available here. Defendant's Counterclaim does allege that its Underlying Counterclaim is "inextricably intertwined" with the allegations against Defendant in the Underlying Lawsuit and is "necessary for its defense." ECF No. [20] ¶ 12. But the Court is not required to accept this conclusory allegation. *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250,1262 (11th Cir. 2004) (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal" (citations and quotations omitted)). Indeed, Defendant does not explain at any point why or how its Underlying Counterclaim is inextricably intertwined with the allegations in the Underlying Lawsuit or is necessary to its defense in the Underlying Lawsuit. At most, Defendant merely urges the Court to deem its Underlying Counterclaim compulsory, ECF No. [28] at 9.

The Court's analysis supports the opposite conclusion. Fetes' complaint is focused on allegations about Defendant's "unlawful attempts to run Fetes out of business." ECF No. [1-2] ¶ 7. The Underlying Counterclaim, ECF No. [20-1], seeks affirmative relief—it makes no attempt to "rebut[]" the claims brought by Fetes or to "reduc[e] the damages sought." ECF No. [28] at 6. It would be unreasonable for the Court to infer that the Underlying Counterclaim was necessary to Defendant's defense, and the Court is not required to draw unreasonable inferences in Defendant's favor. *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999) ( per curiam )

("The nonmovant need not be given the benefit of every inference but only of every reasonable inference."). There is no need for further factual development where the two documents referenced in the Counterclaim—the complaint from the Underlying Lawsuit and the Underlying Counterclaim—are before the Court, and the true intertwinement (or lack thereof) between the two can be analyzed. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1634, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment"). As such, the Court need not accept Defendant's conclusory allegations, especially where those allegations are plainly belied by documents before the Court.[1] For all these reasons, the Court finds that the Counterclaim should be dismissed.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion**, ECF No. [27]**, is **GRANTED**.
2. The Counterclaim, **ECF No. [20]**, is **DISMISSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 7, 2026.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record

[1] To be clear, the Court finds *Safeguard* unavailing as an out-of-circuit decision that is not binding on this Court. The Court offers this portion of its analysis only to show that, even on *Safeguard*'s own terms, Defendant's Counterclaim would still be subject to dismissal.